IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

LEWIS W. HAWKINS                                                  PLAINTIFF

vs.                          Civil No. 2:15-cv-02267-BAB

NANCY A. BERRYHILL                                   DEFENDANT
Acting Commissioner, Social Security Administration[1]

**MEMORANDUM OPINION**

      Lewis W. Hawkins ("Plaintiff") brings this action under 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("The Act").

      The Parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. (ECF No. 5).[2] Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

**1.**     **Background:**

      Plaintiff protectively filed his disability applications for DIB and SSI on November 29, 2010. (ECF No. 15, p. 19). In his applications, Plaintiff alleges being disabled due to major depression,

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The docket numbers for this case are referenced by the designation "ECF No. ___." The transcript pages for this case are referenced by the designation "ECF No. ___, p. ___."

1

other mental issues, and a sleep disorder. (ECF No. 15, p. 204). Plaintiff alleges an onset date of January 1, 2008. (ECF No. 15, pp. 19, 200). These applications were denied initially and again upon reconsideration. (ECF No. 15, pp. 97-112).

Thereafter, Plaintiff requested an administrative hearing on his denied applications, and this hearing request was granted. (ECF No. 15, pp.113-20). Plaintiff's administrative hearing was held on October 19, 2011, in Fort Smith, Arkansas. (ECF No. 15, pp. 45-75). At the time of this hearing, Plaintiff was forty-five (45) years old, which is defined as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). (ECF No. 15, p. 200). As for his level of education, Plaintiff completed the ninth grade. (ECF No. 15, p. 205).

After this hearing, on November 4, 2011, the ALJ entered an unfavorable decision denying Plaintiff's applications for DIB and SSI (ECF No. 15, pp. 16-30). Thereafter, on November 17, 2011, Plaintiff requested a review by the Appeals Council. (ECF No. 15, p. 13). The Appeals Council denied this request on April 19, 2013. (ECF No. 15, pp. 6-9). On June 7, 2013, Plaintiff filed an appeal with this Court and a Judgment was entered on August 29, 2014, reversing and remanding the Commissioner's decision, and for further development regarding Plaintiff's Global Assessment of Functioning ("GAF") scores. *Hawkins v. Colvin*, No. 2:13-cv-02149, 2014 WL 4264762 (W.D. Ark. 2014).

Thereafter, Plaintiff's new administrative hearing was held on March 11, 2015, in Fort Smith, Arkansas. (ECF No. 15, pp. 516-40). Plaintiff appeared via teleconference from the Arkansas Department of Corrections in Malvern, Arkansas and was represented by Fred Caddell. (ECF No. 15, pp. 495, 516-18, 521). Plaintiff and Vocational Expert ("VE") Dr. Larry Cyford testified at this hearing. (ECF No. 15, pp. 516-40).

After this hearing, on October 21, 2015, the ALJ entered an unfavorable decision denying Plaintiff's applications for DIB and SSI. (ECF No. 15, pp. 492-509). In this decision, the ALJ found Plaintiff met the insured status requirements of the Act through June 30, 2012. (ECF No. 15, p. 497, Finding 1). The ALJ found Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since January 1, 2008, his alleged onset date. (ECF No. 15, p. 497, Finding 2). The ALJ determined Plaintiff had the following severe impairments: major depression, polysubstance abuse vs. dependence in questionable remission, and antisocial personality traits. (ECF No. 15, p. 498, Finding 3). Despite being severe, the ALJ determined these impairments did not meet or medically equal the requirements of any of the Listings of Impairments in Appendix 1 to Subpart P of Part 404 ("Listings"). (ECF No. 15, pp. 498-500, Finding 4).

The ALJ then considered Plaintiff's Residual Functional Capacity ("RFC"). (ECF No. 15, pp. 500-07, Finding 5). First, the ALJ evaluated Plaintiff's subjective complaints and found his claimed limitations were not entirely credible. *Id.* Second, the ALJ determined Plaintiff retained the RFC to perform: "a full range of work at all exertional levels but with the following nonexertional limitations: the [sic] is limited to work involving simple, routine, and repetitive tasks, involving only simple, work-related decisions, with few, if any, workplace changes, and no more than incidental contact with co-workers, supervisors, and the general public" *Id.* at 500.

The ALJ then determined Plaintiff could not return to his Past Relevant Work ("PRW"). (ECF No. 15, p, 507, Finding 6). The VE testified at the administrative hearing regarding this issue. (ECF No. 15, pp. 536-38). Based on Plaintiff's age, education, work experience, and RFC, the ALJ determined there were jobs existing in significant numbers in the national economy Plaintiff could perform, such as an ordinance checker, which has a DOT code of 737.687-026, with approximately

twelve thousand one hundred fifty (12,150) jobs in the national economy, and approximately one hundred seventy-four (174) jobs in the state of Arkansas, as an ampoule sealer, which has a DOT code of 559.687-014, with approximately twenty-four thousand thirty-three (24,033) jobs in the national economy, and approximately one hundred seventy (170) jobs in the state of Arkansas, and as a circuit board inspector, which has a DOT code of 726.684-110, with approximately seven thousand four hundred seventy-nine (7,479) jobs in the national economy, and approximately one hundred seven (107) jobs in the state of Arkansas. (ECF No. 15, p. 508-09, Finding 10). Because jobs exist in significant numbers in the national economy which Plaintiff can perform, the ALJ also determined Plaintiff had not been under a disability, as defined by the Act, from January 1, 2008, through October 21, 2015, the date of the ALJ's decision. (ECF No. 15, p. 509, Finding 11).

Thereafter, on December 30, 2015, Plaintiff filed the present appeal with this Court. (ECF No. 1). The Parties consented to the jurisdiction of this Court on December 31, 2015. (ECF No. 5). This case is now ready for decision.

**2.      Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *see* 42 U.S.C. § 405(g) (2006); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *see Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001).

As long as there is substantial evidence in the record to support the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *see*

*Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *see Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *see Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). A plaintiff must show his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity ("RFC") to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove there are other jobs in the national economy the claimant can perform.

*see Cox,* 160 F.3d at 1206; 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached. *see* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

**3.     Discussion:**

In his appeal brief, Plaintiff raises four argumenst for reversal: 1) the ALJ failed to fully develop the record; 2) the ALJ erred as to credibility; 3) the ALJ erred as to RFC; and 4) the ALJ erred as it relates to "severe" findings. (ECF No. 12).

**A.     Medically Determinable Impairments**

A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1508, 416.921. Generally, "your statement of symptoms, a diagnosis, or a medical opinion," alone is not enough to establish the existence of a medically determinable impairment. 20 C.F.R. § 416.921, *see also* 20 C.F.R. § 404.1508. On July 25, 2010, Plaintiff complained of anxiety symptoms but the final clinical impression was for suicidal ideation and substance abuse. (ECF No. 15, pp. 359-60). Evidence from Hillcrest Medical Center on November 22, 2010, shows an assessment for anxiety, but no reference to the clinical or laboratory techniques used to reach that assessment. (ECF No. 15, pp. 475-76). The assessment appears to be based on Plaintiff's own subjective complaints as the record indicates, "he states that his anxiety is very high at this time and would like some medication for it." (ECF No. 15, p. 475). The same record indicates the planned treatment was to continue the same treatment Plaintiff was receiving for his depression. (ECF No. 15, p. 476). On January 18, 2011, a physician's assistant, James Saunders, associated Plaintiff's anxiety symptoms with his depression diagnosis. (ECF No. 15, pp.

443-44, 488). Evidence from River Valley Primary Care Services on April 12, 2011, show a reported history of depression with anxiety but Mr. Saunders' assessment was for psychosis, recurrent major depression, and personality disorder. (ECF No. 15, pp. 485-86). A physician's assistant is not an "acceptable medical source" for purposes of establishing the existence of a medically determinable impairment. 20 C.F.R. §§ 404.1513, 416.913.

I find, based on examination of the record as a whole, the ALJ's decision with regard to the identification of Plaintiff's medically determinable impairments, and the severity thereof, is based on substantial evidence.

### B. Credibility

In assessing the credibility of a claimant, the ALJ is required to examine and to apply the five factors from *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984) or from 20 C.F.R. § 404.1529 and 20 C.F.R. § 416.929.[3] *see Shultz v. Astrue,* 479 F.3d 979, 983 (2007). The factors to consider are as follows: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the functional restrictions. *see Polaski,* 739 at 1322.

The factors must be analyzed and considered in light of the claimant's subjective complaints of pain. *see Id.* The ALJ is not required to methodically discuss each factor as long as the ALJ acknowledges and examines these factors prior to discounting the claimant's subjective complaints.

---

[3] Social Security Regulations 20 C.F.R. § 404.1529 and 20 C.F.R. § 416.929 require the analysis of two additional factors: (1) "treatment, other than medication, you receive or have received for relief of your pain or other symptoms" and (2) "any measures you use or have used to relieve your pain or symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.)." However, under *Polaski* and its progeny, the Eighth Circuit has not yet required the analysis of these additional factors. *see Shultz v. Astrue,* 479 F.3d 979, 983 (2007). Thus, this Court will not require the analysis of these additional factors in this case.

*see Lowe v. Apfel,* 226 F.3d 969, 971-72 (8th Cir. 2000). As long as the ALJ properly applies these five factors and gives several valid reasons for finding that the Plaintiff's subjective complaints are not entirely credible, the ALJ's credibility determination is entitled to deference. *see Id.*; *Cox v. Barnhart,* 471 F.3d 902, 907 (8th Cir. 2006). The ALJ, however, cannot discount Plaintiff's subjective complaints "solely because the objective medical evidence does not fully support them [the subjective complaints]." *Polaski,* 739 F.2d at 1322.

When discounting a claimant's complaint of pain, the ALJ must make a specific credibility determination, articulating the reasons for discrediting the testimony, addressing any inconsistencies, and discussing the *Polaski* factors. *see Baker v. Apfel,* 159 F.3d 1140, 1144 (8th Cir. 1998). The inability to work without some pain or discomfort is not a sufficient reason to find a Plaintiff disabled within the strict definition of the Act. The issue is not the existence of pain, but whether the pain a Plaintiff experiences precludes the performance of substantial gainful activity. *see Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir. 1991).

In the present case, the ALJ extensively discussed Plaintiff's credibility and provided numerous good reasons for discrediting same. First, the ALJ noted Plaintiff did not seek any regular care for three years after his alleged onset date, and instead sporadically visited the hospital emergency room and that he failed to maintain recommended follow-up appointments for further care. (ECF No. 15, p. 501). *see Moad v. Massanari*, 260 F.3d 887, 892 (8th Cir. 2001) (in assessing credibility, the Court noted Plaintiff had not sought treatment from any physician in the seven months prior to the administrative hearing). Then, the ALJ considered Plaintiff's claims that he lacked the financial resources to access necessary care and determined Plaintiff's daily cigarette usage and regular abuse of illicit drugs and alcohol, combined with the lack of evidence Plaintiff

8

attempted to obtain free or reduced cost healthcare from any provider, were inconsistent with Plaintiff's allegations of insufficient finances or disabling symptoms. (ECF No. 15, p. 501). *see Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th Cir. 1992). The ALJ also considered Plaintiff's activities of daily living and noted Plaintiff could "regularly attend to his own personal hygiene; prepare simple meals; perform household chores . . . drive a vehicle; reside alone; manage his own financial affairs; attend church services; and assist in the care of livestock (feeding, watering, etc.)." (ECF No. 15, p. 503). *see, e.g.*, *Roberson v. Astrue*, 481 F.3d 1020, 1025 (8th Cir. 2007) (holding that substantial evidence supported ALJ's denial of disability benefits in part because claimant "engaged in extensive daily activities," including taking care of her child, driving a vehicle, preparing meals, performing housework, shopping for groceries, handling money, and visiting family); *Wagner v. Astrue*, 499 F.3d 842, 852 (8th Cir. 2007) (holding that substantial evidence supported ALJ's denial of disability benefits in pert because claimant "engaged in extensive daily activities, such as fixing meals, doing housework, shopping for groceries, and visiting friends"). The ALJ, moreover, specifically considered Plaintiff's claims regarding his medication side effects, specifically "sleepiness and excessive sleep, difficulty focusing, nausea, and frequent urination." (ECF No. 15, p. 506). The ALJ noted, however, that the only record indicating Plaintiff complained of side effects was one from January 4, 2011, where Plaintiff complained of nausea and dizziness caused by Seroquel. (ECF No. 15, pp. 455, 506). *see Zeiler v. Barnhart*, 384 F.3d 932, 936 (8th Cir. 2004) (alleged side effects were properly discounted when Plaintiff did not complain to doctors that her medication made concentration difficult).

The ALJ provided a lengthy analysis of Plaintiff's history of non-compliance with his healthcare providers' recommendations. The ALJ stated:

> First, the undersigned notes that [Plaintiff] left the hospital, following his accident, against medical advice. The record reflects that [Plaintiff] checked out before undergoing a neurology examination as well as a neuro/psych evaluation recommended by Dr. Seffense to obtain information regarding [Plaintiff's] ability to perform daily activities such as driving a vehicle. (Exhibit 18F/17). In addition, Dr. Seffense's treatment notes for a follow up visit, dated February 11, 2013, reflect that [Plaintiff] reported that his main complaint was pain in his right ankle. However, Dr. Seffense noted that [Plaintiff] was 'noncompliant' in that he was not wearing his boot, and opined that [Plaintiff's] noncompliance was most likely the cause of his pain. (Exhibit 22F/3). Similarly, the treatment notes of orthopedic surgeon David Sudbrink, M.D. dated February 12, 2013 reflect that [Plaintiff] reported during a follow up visit that he did not like the brace/boot he had been provided for his ankle fracture, and that he had not been wearing it as recommended. (Exhibit 19F/3). Finally, Dr. Sudbrink's treatment notes dated March 13, 2013 appear to indicate that Dr. Sudbrink warned [Plaintiff] to take his pain medications only as prescribed and indicated that he would not provide any 'early' refills (thus implying that [Plaintiff] had not been taking his pain medications as prescribed). (Exhibit 19F/6).

(ECF No. 15, p. 502). In another part, the ALJ further noted:

> The record reflects that [Plaintiff] had decided to quit taking Remeron on his own because he felt as if he had lost its effectiveness. (Exhibit 7F/4). On April 12, 2011, [Plaintiff] reported that he had increased his dosage of Risperdal himself to 4mg a day without consulting his treating provider. (Exhibit 15F/2). Finally, on October 13, 2011, Mr. Saunders noted that [Plaintiff] had not yet gone for mental health counseling as was recommended. (Exhibit 17F/5).

(ECF No. 15, p. 504). Plaintiff's repeated non-compliance with his prescribed medication and treatment was a proper factor for the ALJ to consider. *see Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) ("A failure to follow a recommended course of treatment . . . weighs against a claimant's credibility").

I find substantial evidence supports the ALJ's credibility assessment and because the ALJ provided multiple valid reasons for discounting Plaintiff's subjective complaints, I defer to the ALJ's credibility determination. *see Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007) (this Court defers to the ALJ's credibility determination when it is supported by good reasons and substantial evidence).

### C. RFC Determination

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §§ 404.1545, 416.945. A disability claimant has the burden of establishing his or her RFC. *Vossen v. Astrue*, 612 F. 3d 1011, 1016 (8th Cir. 2010). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held a "claimant's residual functional capacity is a medical question." *Miller v. Colvin*, 784 F.3d 472, 479 (8th Cir. 2015) (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

Plaintiff argues the ALJ failed to consider Plaintiff's physical impairments in his RFC determination. (ECF No. 12, pp. 15-16). Although Plaintiff alleged sleep disorder and numbness of his left hand and fingers in his application, the ALJ determined neither alleged impairment was medically determinable. (ECF No. 15, p. 498). Although Plaintiff cites his prior motor vehicle accident as a reason he would be unable to perform heavy work or stand up during regular working hours, Plaintiff has not pointed to any particular piece of evidence which supports the proposition that Plaintiff was more limited than accounted for by the limitations set forth in the ALJ's RFC determination. The ALJ discussed Plaintiff's January 27, 2013, motor vehicle accident and noted that Dr. Stephen Seffense's discharge notes contained the following diagnostic impressions: "head-

11

on motor vehicle collision; cardiac arrest with cardiopulmonary resuscitation at the scene; splenic rupture with hemoperitoneum, hypotension, and hemodynamic instability; bilateral liver lacerations; a history of recreational drug usage; and a pulmonary contusion with aspiration." (ECF No. 15, pp. 501-02). The ALJ continued, however, and analyzed all the evidence in the record, including Plaintiff's repeated noncompliance with treatment, and x-rays of Plaintiff's ankle in February, March, and April of 2013, as well as MRI's of Plaintiff's brain and cervical spine in March of 2013. (ECF No. 15, pp. 502-03). Ultimately, the ALJ determined the objective medical evidence in the record demonstrated overall that "[Plaintiff's] injuries healed satisfactorily and/or that [Plaintiff] demonstrates no or mild conditions." (ECF No. 15, p. 502). I note that in formulating Plaintiff's RFC, the ALJ fully summarized all of Plaintiff's medical records and separately discussed each of his alleged impairments. Based on the ALJ's synopsis of Plaintiff's medical records and discussion of each of his alleged impairments, I conclude that the ALJ properly considered the combined effects of Plaintiff's impairments, even those which the ALJ determined were non-severe. *see Martise v. Astrue,* 641 F.3d 909, 924 (8th Cir. 2011).

Plaintiff further argues the ALJ failed to adequately analyze his GAF scores. (ECF No. 12, pp. 16-18). The ALJ specifically considered each of Plaintiff's GAF scores, but afforded them little weight. (ECF No. 15, pp. 504-05). GAF scores may be relevant to a determination of disability based on mental impairments, but "an ALJ may afford greater weight to medical evidence and testimony than to GAF scores when the evidence requires it." *Jones v. Astrue*, 619 F.3d 963, 974 (8th Cir. 2010) (quotation omitted); *see also Pate-Fires v. Astrue*, 564 F.3d 935, 944-45 (8th Cir. 2009). In the present case, the ALJ carefully considered Plaintiff's scores and determined they conflicted with other objective medical evidence in the record, including the clinical observations of Plaintiff's

treating physicians at The Bridge Way and Hillcrest Medical Center, as well as of the consulting examiner, Dr. Patricia Walz. (ECF No. 15, pp. 504-05).

I find the ALJ provided good reasons for discounting the low GAF scores provided by Plaintiff's treating mental health providers, and I find substantial evidence in the record as a whole supports the ALJ's RFC determination.

### B. Development of the Record

In the present case, the combination of medical evidence, State agency physician opinions, and the Plaintiff's own testimony were sufficient to assess Plaintiff's RFC. The Eighth Circuit has held that an ALJ is not required to order a consultative evaluation of every alleged impairment; he simply has the authority to do so if the existing medical sources do not contain sufficient evidence to make an informed decision. *see Matthews v. Bowen*, 879 F.2d 422, 424 (8th Cir. 1989). The ALJ's failure to order such an evaluation only constitutes reversible error when such an evaluation was necessary for him to make an informed decision. *see Gasaway v. Apfel*, 187 F.3d 840, 842 (8th Cir. 1999); *Freeman v. Apfel*, 208 F.3d 687, 692 (8th Cir. 2000). An ALJ does not necessarily need the opinion of a consultative examiner to assess a claimant's RFC. *see Page v. Astrue*, 484 F3d. 1040, 1043 (8th Cir. 2007) (the medical evidence, State agency physician opinions, and claimant's own testimony were sufficient to assess RFC); *Stormo v. Barnhart*, 377 F.3d 801, 807-08 (8th Cir. 2004) (medical evidence, State agency physicians' assessments, and claimant's reported activities of daily living supported the RFC). The ALJ discussed the medical evidence from numerous treating physicians and the opinions of the non-examining State agency consultants, and set forth the reasons for the weight given to the opinions. Plaintiff, moreover, has not pointed to any relevant evidence to argue that the ALJ would have reached a different conclusion had another medical professional

examined Plaintiff. Furthermore, Plaintiff has not demonstrated that a failure to consult with another medical professional resulted in any prejudice above and beyond receipt of an unfavorable decision in his case. *see Haley v. Massanari*, 258 F.3d 742, 749-50 (8th Cir. 2001).

**4.    Conclusion:**

Based on the foregoing, the undersigned finds the decision of the ALJ, denying benefits to Plaintiff, is supported by substantial evidence and should be affirmed. A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**ENTERED this 3rd day of February 2017.**

/s/  Barry A. Bryant
HON. BARRY A. BRYANT
U. S. MAGISTRATE JUDGE